UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEANINE L. JACKSON,

        Plaintiff,

v.

Case No. 20-cv-518-pp

UNITED MAILING SERVICES, INC.,
VIRGINIA PRADO,
TANYA RENEE GAMERDINGER,
KATIE LUMBLEY,
MOTORISTS INSURANCE GROUP
and JOHN DOE,

        Defendants.

---

**ORDER GRANTING MOTION TO DISMISS FILED BY DEFENDANTS PRADO, GAMERDINGER, LUMLEY AND MOTORISTS INSURANCE GROUP (DKT. NO. 8)**

---

On March 31, 2020, the plaintiff filed a complaint alleging that the defendants failed to reasonably accommodate her disability and terminated her in violation of the Americans with Disabilities Act (ADA). Dkt. No. 1. The plaintiff, who is representing herself, sued United Mailing Services, Inc., Virginia Prado, Tanya Renee Gamerdinger, Katie Lumley, John Doe and Motorists Insurance Group. Id. at 1. The individual defendants—Prado, Gamerdinger and Lumley—and Motorists Insurance Group have filed a motion to dismiss, arguing that they are not an "employer" within the meaning of the ADA. Dkt. No. 8. The plaintiff has responded, dkt. no. 13, and the defendants filed a reply, dkt. no. 16. Because these defendants are not subject to liability

1

under the ADA, the court will grant their motion to dismiss and will allow the plaintiff to proceed with her claims against United Mailing Services, Inc. only. In a separate order, the court will require the parties to file their Rule 26 report.

I.      **Motion to Dismiss (Dkt. No. 8)**

   A.   Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

   B.   Facts Alleged in the Complaint

The plaintiff alleges, "upon information and belief,"[1] that she has worked in the "mailing industry since 1988 as a mail processor." Dkt. No. 1 at ¶15. She lists her previous employers as Franchise Mailing Systems, Integrated

---

[1] It is not clear why the plaintiff states facts about herself—facts which she personally knows—"upon information and belief." Parties use the phrase "upon information and belief" to allege facts of which they have no personal, direct knowledge but which they believe to be true based on outside information. It seems that the plaintiff ought to know whether she has worked as a mail processor, as well as several of the other facts which she has alleged "upon information and belief."

2

Mailing Systems, MCIC and the United States Postal Service. Id. at ¶16. She says that on October 9, 2019, United Mailing Services, Inc., in Brookfield, Wisconsin, hired her to work as a mail processor. Id. at ¶18. She started work at that job on October 14, 2019. Id.

The plaintiff alleges that around November 1, 2019, she began to feel "medical alignments and pain in her right knee." Id. at ¶24. She says that three days later, she saw her doctor and explained how the problems with her right knee were affecting her ability to walk and stand. Id. The doctor referred the plaintiff to a physical therapist. Id. at ¶26.

The plaintiff says that on November 6, 2019, she called in to work and told the hiring manager, Virginia Prado, that she wouldn't be coming in to work "because her knee was bothering her." Id. at ¶¶8, 27. The plaintiff alleges that Prado told her that she should try to make it because she was a new hire and was "accumulating points." Id. at ¶27. The plaintiff says she then verified with Prado that she had twenty-four points she could use and that she would lose three points by calling in to say that she couldn't report. Id.

The plaintiff says that when she returned to work the following day, a supervisor named Laurie asked the plaintiff how she was doing. Id. at ¶28. The plaintiff responded that her knee still hurt. Id. Laurie suggested the plaintiff wear shoes compatible with working on concrete floors. Id. The plaintiff says that Laurie later accused the plaintiff of constantly leaving before all her work was done. Id. at ¶29. The plaintiff explained, without agreeing with Laurie, that she needed to catch the bus and that the last bus left at 12:59 a.m. Id.

3

The plaintiff alleges that on November 11, 2019, defendant Tanya Gamerdinger told the plaintiff that Prado wanted to speak with her. Id. at ¶30. She says Prado told her that Prado had heard there were problems with the plaintiff leaving before all the mail was done on the plaintiff's machine. Id. at ¶31. The plaintiff says she denied the accusations. Id. She says that Prado then told the plaintiff that she was to stay until all the mail was completed on her machine. Id. The plaintiff says that she told Prado that that was "fine," but that she informed Prado that her physical therapy would begin on November 12, 2019. Id. Prado told the plaintiff to give any medical documentation to any of her supervisors. Id.

The plaintiff explains that the next day—at the plaintiff's request—someone from the physical therapy office called United Mailing Services, Inc., and spoke with corporate manager, Katie Lumley. Id. at ¶¶32, 33. Lumley asked the person what this was all about and whether the plaintiff's injury was work related. Id. at ¶33. The person from the physical therapy office responded that he/she didn't know. Id. The plaintiff also had asked her doctor's office to write a statement limiting her hours until she completed physical therapy. Id. at ¶34. The plaintiff says that on November 12, 2019, the nurse from the doctor's office told the plaintiff it would take seventy-two hours to get that document from the doctor. Id. at ¶35. Id. at ¶36. The plaintiff says that "[o]n "information and belief," Lumley told the nurse that the plaintiff had been hired full time, had only worked there about a week and they couldn't reduce her hours. Id. at ¶37.

4

Meanwhile, the plaintiff says that at the beginning of her shift on November 12, 2019, she left two envelopes "at the front counter . . . [o]ne addressed to the defendant Virginia Prado and to the defendants United Mailing Services Inc." Id. at ¶38. The plaintiff hand-delivered an envelope to Gamerdinger. Id. The plaintiff says that the envelope contained a brief letter "stating that [the plaintiff's] hours be reduced from 8 hours to 4 hours daily until the completion of her physical therapy." Id. The plaintiff alleges that Gamerdinger chased after her and asked what was in the envelope. Id. at ¶39. Gamerdinger allegedly said "well if it has restrictions in it, we can't accommodate you." Id. The plaintiff says that after opening the letter, Gamerdinger told the plaintiff "we can't accommodate you and we[']re going to have to let you go." Id. The plaintiff replied, "I'm getting fired because I am hurt;" Gamerdinger responded by asking the plaintiff who the plaintiff had told about the injury. Id. When the plaintiff responded that Laurie and Prado knew, Gamerdinger "stormed away" and spoke with supervisor Laurie. Id.

The plaintiff says she then called her mother and put her on speaker phone. Id. at ¶40. The plaintiff approached Gamerdinger and Laurie but they went into an office. Id. The plaintiff followed them into the office and told them she had a third party on the phone. Id. Laurie responded that she knew the plaintiff was having knee issues because she'd seen it on a board that listed when employees called in and why. Id. Prado entered the room and said that the doctor's assistant had told Prado that the plaintiff's knee injury was a pre-existing condition; the plaintiff says she denied this and could prove it was not

5

pre-existing. Id. Prado allegedly said they would hold her job until she completed physical therapy and that the plaintiff should contact Lumley. Id.

The plaintiff says that on November 13, 2019 she went to get her medical records to prove that her knee injury wasn't a pre-existing condition. Id. at ¶41. The plaintiff called Lumley, saying she was at her doctor's office and that Lumley and Prado had been provided with false information; the plaintiff told Lumley that she had evidence that contradicted what Lumley and Prado were told and that she was at her doctor's office dealing with the issue. Id. at ¶45.

The plaintiff says that on November 14, 2019, she went to Lumley to give her the medical documentation showing that the plaintiff did not have a pre-existing condition and information from her doctor confirming that her hours could be accommodated. Id. at ¶46. A man named Bob walked the plaintiff into an office; the plaintiff asked Lumley to sign a document acknowledging that she received a worker's compensation request. Id. The plaintiff says that Lumley refused to sign the document but said she would acknowledge receipt of the letter. Id. When the plaintiff went to get her medical records, Lumley told the plaintiff that Lumley didn't know what this was all about and that it was Lumley's understanding that the plaintiff had been terminated. Id. The plaintiff says she responded that Prado had told the plaintiff to give Lumley any documents the plaintiff may have; she says that at that point, Lumley and Bob "just looked at each other." Id. The plaintiff said to Lumley, "[S]o I got fired for asking for reasonable accommodations and because I'm hurt?" Id. Lumley said "yes and because you touched a supervisor the defendant Tanya Gamerdinger

6

and was poking her and stuff and got up in her face." Id. The plaintiff says she was "dumbfounded" and explained that she simply got close to Gamerdinger because the machines were so loud. Id.

The plaintiff says that on November 15, 2019, she sent United Mailing Services, Inc. a Notice to Preserve Evidence (video footage) of the November 12, 2019 incident between Gamerdinger and the plaintiff. Id. at ¶50.

The plaintiff says that while she worked at United Mailing Services, she was a "self-paying college student," scheduled to graduate in May 2020. Id. at ¶51. Because she couldn't pay the remainder of the school balance, she had to "set out the Spring semester of 2020 delaying obtaining her college degree," and she alleges that her discriminatory firing by United Mail Services caused that. Id. The plaintiff alleges that all the defendants, including Motorists Insurance Group, conspired to have her terminated because she was being treated by several doctors and they knew she was hurt. Id. at ¶55. The plaintiff also alleges that Prado told the plaintiff to give medical documentation to her supervisors, that Gamerdinger falsely accused the plaintiff of insubordination and that Lumley told the plaintiff's medical providers that United Mailing Services doesn't accommodate work schedules or work accommodations. Id. The plaintiff alleges that the defendants' actions violated the ADA, citing both failure to accommodate and her termination. Id. at ¶¶58-62. She seeks compensatory and punitive damages, fees, costs and interest. Id. at pages 11-12.

C.  Defendants' Arguments

Defendants Prado, Gamerdinger and Lumley move to dismiss the claims against them because individual employees are not proper parties to claims under the ADA. Dkt. No. 9 at 3 (citing EEOC v. AIC Sec. Investigations, Inc., 55 F.3d 1276, 1279 (7th Cir. 1995)). The insurance company, Motorists Insurance Group, moves for dismissal because it does not meet the definition of an employer and cannot be individually liable. Id. at 4.

D.  Plaintiff's Arguments

The plaintiff argues that the motion to dismiss is premature. Dkt. No. 13. She points out that to date, no discovery has taken place. Id. at 1. The plaintiff believes that she has adequately alleged that Gamerdinger and Lumley accused the plaintiff of touching Gamerdinger and leaving work early, id., and that Prado told her she could return to work after completing physical therapy, id. at 2. The plaintiff maintains she has the right to question these individual defendants and speculates that, in the process, she may discover that she has other claims. Id. at 1. She also believes that she has adequately alleged that Motorists Insurance Group provides liability insurance and there may be a policy that covers the costs of an ADA lawsuit. Id. She asks the court to deny the defendants' motion without prejudice until after discovery. Id. at 2.

D.  Analysis

The plaintiff has sued her former employer, supervisors, managers and her employer's insurance company for violations of the ADA. The Seventh Circuit has held that individuals who do not otherwise meet the statutory

8

definition of "employer" cannot be held liable under the ADA. <u>AIC Sec. Investigations</u>, 55 F.3d at 1282. The ADA defines an "employer" as follows:

> The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.

42 U.S.C. §12111(5)(A). This definition is binding on the court—it cannot allow the plaintiff to sue someone who does not meet the statutory definition of an employer.

The only defendant that arguably meets this definition is United Mailing Services, Inc., a privately owned business. The plaintiff alleges that the defendants are covered employers because "the defendants operated in an industry affecting commerce and because they had over 25 employees working for each working day in each of 20 or more calendar weeks in the current and preceding year." Dkt. No. 1 at ¶14. That allegation may be true of *United Mailing Services*, but it is not true of the individual defendants. And the insurance company may meet the definition of "employer"—the court does not know—but it was not the *plaintiff's* employer. Section 12112 says that "[n]o covered entity shall discriminate against an individual on the basis of a disability" in matters related to hiring, advancement, compensation or firing; the plaintiff has not alleged that Motorists Insurance Group discriminated against her on any basis and because she did not work for Motorists, she

9

cannot demonstrate that if it *had* discriminated against her, it would have been in relation to hiring, advancement, compensation or firing.

The plaintiff has alleged that the individual defendants were her supervisor, hiring manager and corporate manager. Even if these individuals discriminated against her based on her disability (and the court is not finding that they did), they cannot be held liable under the statute. Federal discrimination statutes such as the ADA hold employers strictly liable "for discriminatory acts perpetrated by supervisors," without the supervisors having to be named separately as a party to the case. Johnson v. Advocate Health and Hospitals Corp., 892 F.3d 887, 904 (7th Cir. 2018) (discussing direct liability in Title VII cases); see also Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995) (explaining that courts "routinely apply arguments regarding individual liability" to Title VII, ADA and the ADEA interchangeably).

The plaintiff admits that she included Motorists Insurance Group as a defendant because it may have issued a policy to United Mailing Services that would provide coverage for damages if she prevails. As the court noted, the plaintiff has not stated any *claim* against Motorists Insurance Group.

The court appreciates that during discovery, the plaintiff may want to ask questions about these individuals and the insurance company or seek documents relating to their role in the events she describes. She can do that even if these individuals and the insurance company are not defendants. If, through discovery, the plaintiff learns facts that would support additional

10

Case 2:20-cv-00518-PP   Filed 11/18/20   Page 10 of 11   Document 19

cannot demonstrate that if it *had* discriminated against her, it would have been in relation to hiring, advancement, compensation or firing.

The plaintiff has alleged that the individual defendants were her supervisor, hiring manager and corporate manager. Even if these individuals discriminated against her based on her disability (and the court is not finding that they did), they cannot be held liable under the statute. Federal discrimination statutes such as the ADA hold employers strictly liable "for discriminatory acts perpetrated by supervisors," without the supervisors having to be named separately as a party to the case. Johnson v. Advocate Health and Hospitals Corp., 892 F.3d 887, 904 (7th Cir. 2018) (discussing direct liability in Title VII cases); see also Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995) (explaining that courts "routinely apply arguments regarding individual liability" to Title VII, ADA and the ADEA interchangeably).

The plaintiff admits that she included Motorists Insurance Group as a defendant because it may have issued a policy to United Mailing Services that would provide coverage for damages if she prevails. As the court noted, the plaintiff has not stated any *claim* against Motorists Insurance Group.

The court appreciates that during discovery, the plaintiff may want to ask questions about these individuals and the insurance company or seek documents relating to their role in the events she describes. She can do that even if these individuals and the insurance company are not defendants. If, through discovery, the plaintiff learns facts that would support additional

claims against any of these defendants, she may ask for permission to amend her complaint under Federal Rule of Civil Procedure 15(a)(2).

## II. Conclusion

The court **GRANTS** defendants Virginia Prado, Tanya Renee Gamerdinger, Katie Lumley and Motorists Insurance Group's Motion to Dismiss the Plaintiff's Complaint. Dkt. No. 8.

The court **DISMISSES** Prado, Gamerdinger, Lumley and Motorists Insurance Group. The plaintiff may proceed on her claims against United Mailing Services, Inc.

Dated in Milwaukee, Wisconsin this 18th day of November, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
